UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CHERMAGNE W.,[1]   Case No. 3:24-cv-112

    Plaintiff,   Bowman, M.J.

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents two claims of error for this Court's review.[2] The Court affirms the ALJ's finding of non-disability because it is supported by substantial evidence in the record.

**I. Summary of Administrative Record**

On April 28, 2021, Plaintiff filed an application for Disability Insurance Benefits ("DIB"). On September 20, 2021, she protectively filed an application for Supplemental Security Income ("SSI"). (Tr. 15). In both applications, Plaintiff initially alleged that she became disabled from mental impairments beginning on March 29, 2021. After her applications were denied at the initial level and on reconsideration, she sought an evidentiary hearing before an administrative law judge ("ALJ"). On May 15, 2023, Plaintiff

---

[1]Due to significant privacy concerns in social security cases, this Court refers to claimants only by their first names and last initials. *See* General Order 22-01.
[2]The parties have consented to final disposition before the undersigned magistrate judge in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

1

appeared with counsel and gave testimony at a telephonic hearing held before ALJ Nicholas J. Schwalbach; a vocational expert ("VE") also testified. (Tr. 40-67.) [3]

Plaintiff was 49 years old on her alleged disability onset date but had reached the age of 52, in the category of "closely approaching advanced age," by the date of the ALJ's decision. She has a high school education and past work as a forklift driver and security officer. (Tr. 31). Since her alleged disability onset date, she has engaged in part-time work but has not engaged in full-time work or substantial gainful activity.

On May 31, 2023, ALJ Schwalbach issued an adverse written decision that concluded that Plaintiff was not disabled through the date of his decision. (Tr. 15-33). The ALJ determined that Plaintiff has the following severe impairments: "affective disorders (depression and/or bipolar disorders), anxiety disorders (social anxiety disorder and/or panic disorder), posttraumatic stress disorder (PTSD), and schizophrenia (20 CFR 404.1520(c) and 416.920(c))." (Tr. 18). The ALJ also found medically determinable but non-severe impairments of vitamin B and D deficiencies, migraines, obesity and a non-severe history of hepatitis C and several substance abuse disorders. (Tr. 18-19.) Considering all of Plaintiff's severe and nonsevere impairments, the ALJ determined that none, either alone or in combination, meets or medically equals any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability. (Tr. 19).

---

[3]The undersigned cites to the Administrative Transcript ("Tr.") rather than to PageID. Plaintiff also appropriately cites to the Administrative Transcript. Regrettably, the Commissioner cites only to "PageID" numbers. Because PageID numbers are not searchable in social security cases, Local Rule 8.1.A (d) requires "pinpoint citations to the administrative record, regardless of whether a party also chooses to provide PageID citations."

2

In his decision, the ALJ found that Plaintiff has no physical limitations and therefore retains the residual functional capacity ("RFC") to perform a "full range of work at all exertional levels," with the following nonexertional limitations based on her mental limitations:

> She is able to understand, remember, and carry out simple instructions and perform routine tasks, and she is able to use judgment to make simple, work-related decisions. She is able to perform goal-oriented work, such as an office cleaner, but she is unable to perform at a production rate pace such as assembly line work. The claimant is limited to occasional superficial interaction with coworkers and supervisors with "superficial interaction" defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading other people or rendering advice. The claimant is limited to no teamwork, tandem tasks, or contact with the public as part of job duties. She is further limited to occasional minor changes in an otherwise routine work setting.

(Tr. 21-22).  Based upon Plaintiff's age, education, and RFC, and considering testimony from the vocational expert, the ALJ found that Plaintiff could not perform her past work, but could still perform other jobs that exist in significant numbers in the national economy, including unskilled positions such as dishwasher, floor waxer, and machine packager. (Tr. 32.) Therefore, the ALJ determined that Plaintiff was not under a disability. (Tr. 33.) The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner.

In this appeal, Plaintiff argues that the ALJ erred: (1) by inadequate consideration of the consultative opinion of psychological examiner Jennifer J. Stoeckel, Ph.D, particularly concerning absenteeism, and (2) by further defining the term "superficial" after determining that the consultants' use of that term was "vague and vocationally undefined." (Tr. 29.) The undersigned finds no error.

3

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. § 1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See id; see also Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

4

*Id.* (citations omitted); s*ee also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 642-643 (6th Cir. 2006); 20 C.F.R. §§ 404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. Plaintiff's Claims of Error**

**1. The ALJ Properly Evaluated the Opinion Evidence**

5

Plaintiff first asserts that the ALJ erred in failing to translate one of the psychological consultant's opinions into work-preclusive limitations. The ALJ evaluated a total of five psychological opinions, including the consultative reports of two examining consultants, Jennifer J. Stoeckel, Ph.D., and Carolyn Arnold, Psy.D., dated July 2021 and August 2022. The examiners' reports did not include specific functional limitations and the ALJ found their opinions to be only "somewhat persuasive." (Tr. 29-30.) In contrast, RFC opinions were provided by non-examining psychological consultants, Drs. Jennifer Whatley and Robyn Murry-Hoffman. Dr. Wahtley reviewed Dr. Stoeckel's report, while Dr. Murry-Hoffman had access to both Drs. Stoeckel's and Arnold's reports. The ALJ found the opinions of Drs. Whatley and Murry-Hoffman to be "generally persuasive" and largely incorporated their opinions into the final RFC determination. (Tr. 28-29.) Finally, the ALJ evaluated but rejected as "not persuasive," the RFC opinions of Ms. Rhea Jeffers, Plaintiff's treating psychiatric nurse practitioner. (Tr. 30-31.)

Current regulations require the ALJ to determine the persuasiveness of each prior administrative medical finding or other medical opinion based upon a list of factors, the most important of which are "supportability" and "consistency." *See* 20 C.F.R. § 404.1520c(b)(2). Supportability focuses on the provider's explanations for his or her opinions, including whether the opinions are supported by relevant objective medical evidence (such as lab results or imaging studies) or other supporting explanations. *See* 20 C.F.R. § 416.920c(c)(1). Consistency is defined as the extent to which an opinion or finding is consistent with evidence from other medical or nonmedical sources. 20 C.F.R. § 416.920c(c)(2). The ALJ may also consider (but is not required to articulate) additional factors: a medical source's specialization and elements of the relationship the medical

6

source has with the claimant, including the length of treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and the examining relationship. 20 C.F.R. § 404.1520c(c)(3)-(5).

Plaintiff's claim of error challenges the ALJ's assessment of the opinion of consulting examiner Dr. Stoeckel as only "somewhat persuasive." The undersigned finds no error, because the ALJ's articulated analysis is well-reasoned, thoroughly articulates both sufficiency and consistency factors, and is substantially supported by the record as a whole.

The ALJ first summarized Dr. Stoeckel's opinions that Plaintiff's symptoms "were likely to negatively impact her ability for sustained focus, attention, concentration, and productivity levels," that the same symptoms would impair her ability to work in close proximity with others, manage workplace personal conflict, and be responsive to constructive criticism, and that her overall ability to adapt to work stress is "negatively impacted…." (Tr. 29, citing Tr. 360.)  The ALJ then explained his interpretation and translation of the report into RFC findings that were not work-preclusive.

> The totality of the record, including objective findings on Dr. Stoeckel's examination, the objective findings on a subsequent psychological consultative examination, the claimant's generally good response to treatment, mental status examinations throughout the period under review, and work history, all demonstrate that the areas of difficulties identified are not work preclusive, and she maintains the ability to sustain substantial gainful activity when those areas are addressed (Exhibits 1F-18F). Despite the areas of difficulty identified by Dr. Stoeckel, her report indicated overall adequate mental functioning with no more than moderate limitations (Exhibit 4F). Similarly, while mental status examinations throughout the record reflect some mood abnormalities, the claimant consistently presents with cognitive functioning and fund of knowledge that were intact and age appropriate (e.g. Exhibit 16F/50). Short- and long-term memory were generally intact, as was her ability to abstract and do arithmetic calculations (e.g. Exhibit 16F/50). Insight into problems often appeared normal, and judgment frequently appeared intact (e.g. Exhibit 16F/50). There were

7

> usually no signs of hyperactive or attentional difficulties, and she was cooperative and attentive (e.g. Exhibit 16F/50). She was generally calm, communicative, and casually groomed (e.g. Exhibit 16F/50). Such findings indicate no more than moderate limitations that are not work preclusive, which is consistent with Dr. Stoeckel's report.

(Tr. 29).

Plaintiff is highly critical of the ALJ's characterization of the report as "no more than moderate limitations that are not work preclusive." (*Id.*) But the report does not identify *any* "severe" mental limitations. In fact, Dr. Stoeckel does not offer any specific functional limitations at all. The undersigned finds the ALJ's characterization to be well-supported.

For example, under "Behavioral Observations/Mental Status Examination," Dr. Stoeckel describes Plaintiff's appearance and behavior as "friendly and cooperative," "casual and neat," with "adequate personal hygiene and grooming." (Tr. 357.) Plaintiff's flow of conversation was "logical, cohesive, and goal-directed…[with] no indication for digression, confusion, or flight of ideas." (*Id.*) Her affect was "*moderately* blunted and flat." (*Id.*, emphasis added). She was also observed to be "*moderately* anxious" with complaints of impaired memory and concentration, forgetfulness, indecision, hypervigilance, hyper-startle response, and sense of impending doom," as well as "racing thoughts." (Tr. 358, emphasis added). She reported that past symptoms of suicidal ideation as well as prior symptoms "are stable and controlled by her medication." (*Id.*) Her cognitive functioning appeared to be average, with "adequate comprehensions" and "no difficulty following oral or written instructions," (Tr. 358, 360), despite "variable" memory and concentration. (Tr. 358).

In addition to her criticism of the ALJ's characterization of the report as depicting moderate limitations, Plaintiff focuses her claim of error on the issue of absenteeism. In

8

the report, Dr. Stoeckel offers the following opinion regarding Plaintiff's ability to respond to work stress:

> Ms. [W] has a history of multiple psychiatric admissions, years of intermittent mental health intervention, psychotropic management, and poor work tenure. Her overall ability to adapt in work-related stress is negatively impacted by her psychological symptoms. The former cause *poor attendance*, lack of productivity, and reduced stress tolerance.

(Tr. 360-361, emphasis added). Plaintiff maintains that the ALJ should have translated the "poor attendance" phrase into work-preclusive RFC findings, and that it was "unreasonable" for the ALJ to fail to do so.

Again, the undersigned finds no error. Substantial evidence exists to support the ALJ's reasonable analysis that Dr. Stoeckel's opinions were only "somewhat persuasive." Having made that assessment, the ALJ was not required to discuss every turn of phrase when formulating the RFC, including the undefined opinion that Plaintiff's symptoms cause "poor attendance."

> The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c). Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding.

*Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 157 (6th Cir. 2009). "Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim, nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 Fed. Appx. 267, 275 (6th Cir. 2015); *see also William D. v. Comm'r of Soc. Sec.*, 2:20-cv-5855-ALM-EPD, 2022 WL 883928 (S.D. Ohio March 25, 2022) (affirming ALJ's failure to include a limitation from a "persuasive" psychological report, because an ALJ need not

9

adopt a medical opinion verbatim, and the court was able to trace and understand the ALJ's reasoning for not including that specific portion of the opinion); *Ferguson v. Comm'r of Soc. Sec.*, No. 2:18-cv-1024, 2019 WL 2414684, at *5 (S.D. Ohio June 7, 2019) ("Nor, as the case law above makes clear, was the ALJ required to explain why he did not adopt their opinions in full"), R&R adopted at 2019 WL 3083112 (S.D. Ohio July 15, 2019).

The undersigned also rejects Plaintiff's premise that Dr. Stoeckel's vague reference to "poor attendance" must equate to work-preclusive absenteeism. The VE testified that for unskilled work, employers generally tolerate only one "*unexcused*" absence per month and being "off-task" for "up to and including ten percent of the workday." (Tr. 64, emphasis added). But the VE clarified that "if it is for a medical excuse that would be treated separately…." than an unexcused absence. (Tr. 65). Precisely what Dr. Stoeckel meant by "poor attendance" (whether excused or unexcused absences) is unclear. But even if Plaintiff did miss more than one day per month for illness, the VE's testimony suggests that would not necessarily be work-preclusive so long as she had a medical excuse.

In support of her contention that the ALJ should have been required to translate Dr. Stoeckel's report into a work-preclusive level of absenteeism and/or "off-task" limitations, Plaintiff cites to other evidence in the record including the report of the second examining consultant, Dr. Arnold. In her August 2022 report, Dr. Arnold recounts Plaintiff's job loss at a factory in 2019 due to "mental illness and attendance issues." (Tr. 524). But that reported job loss occurred two years *before* Plaintiff's alleged onset of disability. And in context, Dr. Arnold's discussion suggests a strong link between Plaintiff's interpersonal difficulties and her work absences. (*See* Tr. 526, discussing Plaintiff's historical report of

10

"not interacting well with co-workers and supervisors and….becoming suspicious, irritable and upset and then often being absent and getting fired.") To fully accommodate Plaintiff's social limitations, the ALJ adopted multiple limitations that restrict her interpersonal interactions in the workplace.

As further support for an absentee rate that would preclude all work, Plaintiff cites to Nurse Practitioner Rhea Jeffers' RFC opinions that Plaintiff would be off-task 20 percent or more of the workday and/or absent from work more than three times per month. But the ALJ reasonably rejected Nurse Jeffers' opinions as "not persuasive" because they were unsupported and inconsistent with both Nurse Jeffers' treatment notes and the record as a whole. (Tr. 30-31). Plaintiff does not directly challenge the ALJ's rejection of Nurse Jeffers' opinions as "not persuasive" or of Dr. Arnold's opinions as only "somewhat persuasive."  (Tr. 29-30).

Finally, Plaintiff briefly criticizes the ALJ's reliance on the RFC opinions of the state agency psychologists because they rendered their opinions prior to the submission of the most recently dated evidence, including the "unpersuasive" RFC Questionnaire authored by Nurse Jeffers. This argument is cursory. To the extent it is considered, the undersigned rejects it because the ALJ fully considered and discussed all relevant evidence submitted after the date of the non-examining consultants' reports. As the ALJ explained, despite occasional increases in symptoms followed by medication adjustments, the record reflects Plaintiff's "generally good response to treatment" and supports RFC findings s that do not preclude all work. (Tr. 29; *see also* Tr. 30).

11

### 2. The ALJ's Definition of "Superficial" Interactions

As stated, the ALJ agreed that Plaintiff has significant social limitations and restricted her interpersonal interactions in the work place accordingly. In her second claim, Plaintiff asserts error in the ALJ's definition of the phrase "superficial interaction":

> The claimant is limited to occasional superficial interaction with coworkers and supervisors with "superficial interaction" defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading other people or rendering advice. The claimant is limited to no teamwork, tandem tasks, or contact with the public as part of job duties.

(Tr. 21-22.)

Plaintiff asserts that the ALJ's definition impermissibly narrows the definition of the term "superficial" used by the state agency mental health reviewing consultants. *See, e.g.*, *William H. v. Comm'r of Soc. Sec.*, No. 3:21-cv-219-CHG, 2022 WL 4591304, at *4-6 (S.D. Ohio Sept. 30, 2022) (ALJ reversibly erred in rejecting "superficial" as not vocationally defined in light of S.D. Ohio case law that defines the term relative to social interactions). The undersigned rejects this claim of error. True, the ALJ provided a definition after stating that the consultants' use of "superficial" was "vague and vocationally undefined." (Tr. 29.) And some courts have reversed based on similar grounds. *See generally, Stephen D. v. Comm'r of Soc. Sec.*, No. 1:21-cv-00746-DRC-SKB, 2023 WL 4991918, at *7 (S.D. Ohio Aug. 4, 2023) (supplemental report and recommendation discussing body of case law in which courts have reversed: "(1) when an ALJ describes the modifier 'superficial' as vocationally vague when formulating the RFC; and (2) when the ALJ interprets or translates an opinion that uses 'superficial' into a vocational RFC assessment of 'occasional' workplace interactions.")

12

As the undersigned explained in *Stephen D. v. Commissioner*, however, that case law represents only one side of a split in *unpublished* authority over whether the term "superficial" is "vocationally vague." The undersigned is in the other camp. Adopting the undersigned's analysis in *Stephen D.*, 734 F. Supp.3d 729 (S.D. Ohio 2024), U.S. District Judge Douglas R. Cole issued this Court's only *published* decision on the issue. *Stephen D.* therefore holds that an ALJ's description of "superficial interaction" as vocationally vague and translation of that phrase into a mental RFC that permits "occasional interaction" does not require remand. "[E]mphasis on the 'qualitative' nature of the vocationally-undefined adjective 'superficial' as if in conflict with the defined 'quantity' of interaction ... ignores the reality that time-limited 'occasional' interactions in an unskilled work setting are reasonably understood to require only surface-level interactions." *Stephen D.*, 734 F.Supp.3d at 738 (quoting R&R).

In addition to *Stephen D.*, the Sixth Circuit's recent decision in *Mabry-Schlicher v. Comm'r of Social Security*, No. 24-3811, 2025 WL 1604376 (6th Cir. June 6, 2025) is directly on point. In that case, the ALJ used an identical definition of "superficial" as the ALJ used in this case. *Id.*, 2025 WL 1604376, at *2. There, counsel also argued that the ALJ erred by imposing a "narrower" definition than the one used by the reviewing psychologists. The appellate court disagreed:

> [A]n ALJ is not required to adopt a psychologist's limitations wholesale. *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). More importantly, … the reviewing psychologists never elaborated on the meaning of the term in their opinions. …[A]pplicable regulations and guidance also lack any specific definition or list of criteria regarding "superficial" workplace interaction. Lacking extensive guidance, the ALJ delineated specific social restrictions based on his understanding of what a "superficial" contact limitation requires in this context. Mabry-Schlicher does not offer developed argumentation that any of these specific restrictions are

13

unsupported by substantial evidence or otherwise unreasonable. Accordingly, we cannot conclude that the ALJ erred on this basis.

*Id.*, at *5.

In the above-captioned case, the consultants whose opinions the ALJ found to be "generally persuasive" provided no individual definitions of the term "superficial." As previously discussed in *Stephen D.*, as well as by the Sixth Circuit in *Mabry-Schlicher*, there is no regulatory definition of that term. The undersigned finds the analysis of *Mabry-Schlicher* to be highly persuasive and therefore rejects Plaintiff's second claim of error.

### III. Conclusion and Order

Accordingly, **IT IS ORDERED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED.**

<u>s/Stephanie K. Bowman</u>
Stephanie K. Bowman
United States Chief Magistrate Judge